# IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

DARNALL V. PARRISH PROJECT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SHAWN DARNALL AND STEPHANIE DARNALL, APPELLANTS,

V.

PARRISH PROJECT, L.L.C., APPELLEE.

Filed June 13, 2017.    No. A-16-672.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Robert Wm. Chapin, Jr., for appellants.

Donald J. Pepperl, P.C., L.L.O., for appellee.

INBODY, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Shawn Darnall and his wife, Stephanie Darnall, appeal from an order of the district court which dismissed their breach of contract claim against Parrish Project, L.L.C., after a bench trial. On appeal, the Darnalls assert that the district court erred in failing to consider their claim that the contracts at issue were void, in finding that they failed to timely tender payment to Parrish Project, and in failing to determine that Parrish Project was unjustly enriched as a result of the parties' agreement. For the reasons set forth herein, we affirm the decision of the district court.

## BACKGROUND

Parrish Project owns a building located at 1418 O Street in Lincoln, Nebraska. The members of Parrish Project are the owners of the businesses located in that building. The Darnalls owned and operated a bar in the building owned by Parrish Project. Shawn described himself as a

"founding" member of Parrish Project. By 2012, the Darnalls owned 19.55 percent of the shares of Parrish Project.

In 2012, the Darnalls owed $10,840 to the Internal Revenue Service (IRS). The IRS notified both Shawn and another member of Parrish Project, James Stevens, that it would put a lien on the Darnalls' interest in the building owned by Parrish Project if the debt was not paid. In order to prevent the IRS from putting a lien on the building, the other members of Parrish Project agreed to loan the Darnalls the money to pay the IRS. On July 27, 2012, the Darnalls signed a Promissory Note agreeing to repay Parrish Project $10,840 plus interest. The Promissory Note provided, in relevant part:

> FOR VALUE RECEIVED, Shawn Darnall and Stephanie Darnall and each of them, promise to pay to Parrish Project, L.L.C., or order, the principal sum of $10,840, with interest on the unpaid principal balance in the amount of 6%, amortized over a 1 year period. Principal and interest shall be payable in monthly installments, commencing on the 27th day of August, 2012, with the monthly amortized installments being in the amount of $932.96.
>
> . . . .
>
> If any installment under this Note is not paid when due and remains unpaid after thirty (30) days written notice to the Borrower, the entire principal amount outstanding and accrued interest thereon shall at once become due and payable at the option of the Note holder. The Note holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance. If suit is brought to collect this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of suit.

In conjunction with the Promissory Note, the Darnalls also signed a Purchase Agreement. That agreement indicated that when the Darnalls received the $10,840 they were borrowing from Parrish Project, they would convey to Parrish Project their 19.55 percent membership interest in the company. Once the Darnalls repaid the loan to Parrish Project, their membership interest would be returned to them. However, the agreement also provided, "In the event that Shawn Darnall and Stephanie Darnall shall default in the payment of said Promissory Note and fail to cure said default, Parrish Project, LLC shall retain complete ownership of the 19.55% membership interest being sold to the LLC by this agreement."

Sometime after signing the Promissory Note and the Purchase Agreement, the Darnalls began making payments towards repaying Parrish Project for the loan. Although the Promissory Note instructed the Darnalls to pay $932.96 per month to the company, Shawn paid $250 per week by depositing the money electronically into Parrish Project's bank account. Shawn stopped making these weekly payments in January 2013. While it is not clear from our record exactly how much the Darnalls paid toward the loan prior to January 2013, it is clear that at that time, the loan was not paid in full.

In July 2013, Stevens and other members of Parrish Project looked into whether the Darnalls had been making payments on the loan. At this time, the company discovered that the Darnalls had not made their monthly payments since January 2013.

On August 8, 2013, an attorney hired by the Darnalls mailed a letter to Stevens and the other members of Parrish Project. That letter provided:

> Please be advised that this office has been retained by Shawn and Stephanie Darnall in regard to the loan made to them by Parrish Project, L.L.C. on or about July 27, 2012.
>
> It is my understanding that Mr. Darnall has attempted to make arrangements to meet with you to tender payment, in full, of the balance due on the Promissory Note, but to date he has not received a response from you about same.
>
> My clients desire to payoff [sic] the loan immediately and, pursuant to the Purchase Agreement dated July 27, 2012, have the 19.55% membership interest in Parrish Project, L.L.C. transferred and conveyed back to them by the company.
>
> Please contact me as soon as possible to make arrangements for you to meet with my clients to accept the payment and to deliver to my clients the documents necessary to properly effect the transfer and conveyance of the 19.55% membership interest back to them.

In addition to the letter sent by the Darnalls' attorney, in early August 2013, Shawn also delivered a note to the members of Parrish Project requesting a chance to meet with them and to "explain . . . exactly what has occurred." None of the members of Parrish Project met with Shawn after receiving this note, but one member did tell Shawn that he should deposit what he owed Parrish Project into the company's bank account.

On March 24, 2015, the Darnalls filed a petition in the district court which alleged that Parrish Project had breached the terms of the Promissory Note and the Purchase Agreement by refusing the Darnalls' payment of the loan. In the petition, the Darnalls specifically alleged that they had made payments on the loan until January 2013. They also alleged, "Pursuant to the Promissory Note [the Darnalls] had until July 27, 2013 to cure their default." Finally, they alleged that they had "tendered payment in full to cure their default" on August 8, 2013, but that Parrish Project had refused to accept the payment. The Darnalls requested an award of damages. In its Answer, Parrish Project generally denied the allegation that the Darnalls had tendered payment but that the company had refused that payment.

Almost one year after the Darnalls filed their initial petition, they filed an amended petition. The amended petition again alleged that Parrish Project had breached the terms of the Promissory Note and the Purchase Agreement by refusing the Darnalls' payment of the loan. However, the amended petition also included a claim that Parrish Project had been unjustly enriched as a result of the parties' agreements. Specifically, the Darnalls alleged,

> That the value of [the Darnalls' membership] shares was much greater than the amount agreed upon by the parties to settle the tax debt of the [Darnalls]. That [Parrish Project's] actions were an abuse of an influential or confidential relationship and that under the circumstances, [Parrish Project] should not hold and enjoy the shares so obtained.

The Darnalls requested that Parrish Project be ordered to compensate them for the value of their membership shares or to return their membership shares to them.

Trial was held on the Darnalls' claims in April 2016. Shawn and Stevens testified at trial. Their testimonies reflected the timeline of events as described above. At the close of the evidence, the district court permitted the parties approximately one week to submit written arguments.

On June 6, 2016, the district court entered an order denying the Darnalls' claims and dismissing their amended petition. In the order, the court found that the Darnalls failed to prove that they had timely tendered payment on the loan to Parrish Project. As a part of this finding, the court indicated that the evidence did not demonstrate that the Darnalls had the ability to pay the outstanding amount due on the loan. The district court also found that the Darnalls' unjust enrichment claim must fail because "there were contracts in place by and between the parties."

Also in the district court's order, it noted that although the case had been litigated as a breach of contract action, in the Darnalls' written argument submitted after the trial, they argued an "alternate theory." While the parties' written arguments are not included in our record, we understand from the district court's order that the Darnalls' "alternate theory" was that the Promissory Note and the Purchase Agreement were not valid contracts because Parrish Project did not have authority under its Operating Agreement to enter into the contracts. The district court rejected this alternate theory, finding:

> Given the pleadings in this matter, facts of this case adduced at trial, and the conduct of the parties while operating under the agreements, the court finds the argument that [Parrish Project] did not have authority under its Operating Agreement to enter into the contracts at issue should be, and hereby is, rejected.

The Darnalls appeal from the district court's order.

## ASSIGNMENTS OF ERROR

On appeal, the Darnalls allege, restated, that the district court erred in (1) failing to consider their claim that the contracts at issue were void, (2) finding that they failed to timely tender payment to Parrish Project, and (3) failing to determine that Parrish Project was unjustly enriched as a result of the parties' agreement.

## STANDARD OF REVIEW

A suit for damages arising from breach of a contract presents an action at law. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Anderson Excavating & Wrecking Co. v. Sanitary Imp. Dist. No. 177*, 265 Neb. 61, 654 N.W.2d 376 (2002). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013). An appellate court will not reevaluate the credibility of the witnesses or reweigh testimony but will review the evidence for clear error. *Id*.

## ANALYSIS

*Promissory Note and Purchase Agreement Are Valid Contracts.*

In their brief on appeal, the Darnalls assert that the "first issue" we must consider "is whether the contract was valid to begin with." Brief for appellant at 5. They contend that pursuant

to the Operating Agreement of Parrish Project, a "special meeting" required the presence of all of the members. Neither Shawn nor Stephanie was present at the special meeting where the members agreed to loan the Darnalls the money to pay the IRS. The Darnalls assert that because "100% of the members were not present [that] any actions taken [at the special meeting] were in fact void." Brief for appellant at 5. Essentially, the Darnalls argue that both the Promissory Note and the Purchase Agreement are not valid and enforceable contracts. This argument has no merit.

The purpose of pleadings is to frame the issues upon which a cause is to be tried, and the issues in a given case will be limited to those which are pleaded. *Welsch v. Graves*, 255 Neb. 62, 582 N.W.2d 312 (1998). A pleading serves to eliminate from consideration those contentions which have no legal significance and to guide the parties and the court in the conduct of cases. *Id.*

The Darnalls did not raise the issue of the validity of the Promissory Note or the Purchase Agreement in either their initial petition or in their amended petition. Instead, in both pleadings, the Darnalls indicated that their claims were based on Parrish Project's alleged breach of the "contracts" between the Darnalls and Parrish Project. Moreover, during the trial, Shawn specifically testified that he considered the Promissory Note and the Purchase Agreement to be contracts and "binding agreements."

We note that Neb. Ct. R. § 6-1115(b) does allow for amendment of the pleadings to conform to the evidence presented at trial if certain conditions are met. In fact, the rule does not require a party to make a specific motion to amend the pleadings when "issues not raised by the pleadings are tried by express or implied consent of the parties." Because the Darnalls failed to raise the issue of the validity of the Promissory Note and the Purchase Agreement in their pleadings, we must determine whether the issue was tried with the consent of Parrish Project such that an amendment of the pleadings was warranted.

The Nebraska Supreme Court has previously discussed when an unpleaded issue was tried by the consent of the parties. See *Blinn v. Beatrice Community Hosp. & Health Ctr.,* 270 Neb. 809, 708 N.W.2d 235 (2006). See, also *United General Title Insurance Co. v. Malone*, 289 Neb. 1006, 858 N.W.2d 196 (2015). The key inquiry of § 6-1115(b) for "express or implied consent" to trial of an issue not presented by the pleadings is whether the parties recognized that an issue not presented by the pleadings entered the case at trial. *Id.*

Express consent may be found when a party has stipulated to an issue or the issue is set forth in a pretrial order. *Blinn v. Beatrice Community Hosp. & Health Ctr., supra*. Here, there was no express consent that the validity of the contracts was a contested issue at the trial.

Implied consent may arise in two situations:

First, the claim may be introduced outside of the complaint--in another pleading or document--and then treated by the opposing party as if pleaded. Second, consent may be implied if during the trial the party acquiesces or fails to object to the introduction of evidence that relates only to that issue. Implied consent may not be found if the opposing party did not recognize that new matters were at issue during the trial. The pleader must demonstrate that the opposing party understood that the evidence in question was introduced to prove new issues.

*Id.* At trial, the Darnalls did offer into evidence the Operating Agreement for Parrish Project. However, initially, it appeared that the offer of this evidence related to proving when Parrish Project was organized and when its building was purchased. Later, the Darnalls' counsel questioned Stevens about some of the rules and procedures for member meetings and decision-making contained within the Operating Agreement. Most of these questions were generalized and pertained to the company's failure to comply with its own procedures over the years. A few questions did pertain specifically to whether Stevens complied with certain rules when asking the other members about loaning the Darnalls the money to pay the IRS. However, the questions never directly tied together the company's failure to comply with its own rules and the validity of the Promissory Note and the Purchase Agreement.

Despite the evidence the Darnalls offered regarding the Operating Agreement and the company's compliance with the rules and procedures espoused within that Operating Agreement, we do not find that Parrish Project understood that the Darnalls were trying to prove that the Promissory Note and the Purchase Agreement were invalid, non-binding agreements. This issue had not been previously raised and it was not thoroughly explored or specifically laid out during the Darnalls' presentation of evidence. Moreover, at trial, Shawn Darnall specifically testified that both the Promissory Note and the Purchase Agreement were contracts and were binding agreements. Finally, we note that the issue of the validity of the contracts was not specifically argued by the Darnalls until their written argument, which was submitted to the district court after the trial and simultaneously with Parrish Project's written argument. As such, there is no indication that Parrish Project ever understood, during the trial, the precise connection between the Darnalls' evidence about the Operating Agreement and their ultimate argument about the validity of the contracts. In addition, it is clear that Parrish Project never had a chance at the trial court level to respond to the Darnalls' assertion about the validity of the contracts.

The district court declined to consider the Darnalls' "alternate theory" of the case due to the Darnalls' failure to plead the issue and the evidence presented at the trial. Upon our review, we cannot say that the district court's decision was erroneous. The Darnalls not only failed to plead the issue of the validity of the contracts, but they specifically and repeatedly alleged that both the Promissory Note and the Purchase Agreement were valid and binding agreements. In fact, Shawn specifically testified at trial that the contracts were, in fact, valid and binding agreements. Based on the position taken by the Darnalls both prior to and during the trial, we do not find that the issue of the validity of the contracts was an issue tried with the consent of both parties. As such, we decline to consider the Darnalls' argument, on appeal, that the contracts are void and unenforceable. We affirm the decision of the district court which rejected the Darnalls' "alternate theory."

*No Timely Tender of Loan Payment.*

The Darnalls next allege that the district court erred in failing to find that they timely tendered payment for the loan to Parrish Project, but that their payment was rejected. The Darnalls essentially assert that the district court erred in failing to find that Parrish Project breached the contracts by refusing to accept full payment on the loan. Upon our review of the record, we do not

find that the district court erred in its finding that the Darnalls did not timely tender payment to Parrish Project.

In the Darnalls' petition and amended petition, they alleged that they had until July 27, 2013, to repay Parrish Project for the loan. In their brief to this court, they assert that they had 12 months to pay the Promissory Note. Brief for appellant at 6. The Promissory Note was executed on July 27, 2012. As such, according to the Darnalls' assertion on appeal, they had until July 27, 2013 to repay Parrish Project for the loan. There was no evidence presented at trial to demonstrate that the Darnalls attempted to repay Parrish Project for the loan prior to July 27, 2013. Rather, the evidence established that the Darnalls stopped making payments on the loan in January 2013. After this time, they did not pay any more money towards the loan. In fact, Shawn testified at trial that he and Stephanie did not even have the money to pay off the loan until August 2013, after the entirety of the loan had become due.

The Darnalls assert that they attempted to pay the loan in full on August 8, 2013, when their attorney sent a letter to the members of Parrish Project which stated that they "desire[d] to payoff [sic] the loan immediately." The district court found that this letter did not constitute "proper tender" of payment. We agree. One claiming an adequate and proper tender of payment has the burden to prove both the offer to pay and the present ability of immediate performance at the time of tender. *Graff v. Burnett*, 226 Neb. 710, 414 N.W.2d 271 (1987). Although the August 8 letter indicates the Darnalls' "desire" to pay the loan, it does not indicate their present ability to actually pay the loan at that time. There was no evidence that the Darnalls actually offered any of the members any money in conjunction with this letter. Moreover, the evidence presented at the trial revealed that the Darnalls could have paid the loan in full at any time by depositing the funds into Parrish Project's bank account, which they had access to because they were members of the company.

Even if we were to find that the August 8 letter constituted a proper tender of payment and that this tender of payment was rejected by Parrish Project, this tender was not timely. As the Darnalls concede in their appellate brief, the debt had to be paid by July 27, 2013. The letter was not sent until 12 days after the deadline for payment.

Based upon the evidence presented at trial, we do not find that the district court erred in finding that the Darnalls failed to timely tender payment on the loan to Parrish Project or in finding that Parrish Project did not breach the parties' agreements.

*No Unjust Enrichment.*

The Darnalls allege that the district court erred in failing to find that Parrish Project was unjustly enriched by retaining possession of the Darnalls' interest in Parrish Project without fully compensating the Darnalls for that interest. However, in the Darnalls' brief on appeal, they concede that if we conclude that the Promissory Note and the Purchase Agreement are enforceable contracts, then their unjust enrichment claim must fail. Brief for appellant at 9-10. As we discussed above, the validity of the Promissory Note and the Purchase Agreement was not a contested issue at the trial. In fact, Shawn testified that these documents were binding contracts. As a result, we affirm the decision of the district court denying the Darnalls' unjust enrichment claim.

The Nebraska Supreme Court has previously explained why an unjust enrichment claim cannot be successful when there is a valid contract between the parties:

> The doctrine of unjust enrichment is recognized only in the absence of an agreement between the parties. The doctrine does not operate to rescue a party from the consequences of a bad bargain. In other words, the enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract.

*Washa v. Miller*, 249 Neb. 941, 950, 546 N.W.2d 813, 818-19 (1996) (citations omitted). Given that there are multiple valid contracts between the Darnalls and Parrish Project, the Darnalls' unjust enrichment claim must fail. The Darnalls turned over their shares in Parrish Project to the company in exchange for a loan. The Darnalls then failed to pay off that loan in a timely manner and, according to the terms of the contracts, they relinquished their interest in their shares of Parrish Project. The Darnalls cannot recover their shares by now claiming that they made a "bad bargain." Their unjust enrichment claim simply has no merit.

## CONCLUSION

Upon our review, we find that the district court did not err in its dismissal of the amended petition brought by the Darnalls against Parrish Project. Accordingly, we affirm.

AFFIRMED.